Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CYNTHIA STEWART,

            Plaintiff,

      v.

SNOHOMISH COUNTY PUD NO. 1,

            Defendant.

No. 2:16-cv-00020-JCC

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES, AND INTEREST

I, Joe Shaeffer, declare as follows:

I am one of the attorneys for Plaintiff Cynthia Stewart . I am over the age of 18, and am competent to testify.

1.      Ms. Stewart hired MHB on a contingent basis in May 2015. I was lead counsel in this case. I am a partner at MacDonald Hoague & Bayless.

2.      I am admitted to practice in Washington State, the United States District Court for the Western District of Washington, the United States District Court for the Eastern District of Washington, and the United States Court of Appeals for the Ninth Circuit. I have also been specially admitted to practice in the Central District of California.

3.      I graduated from Cornell University with a dual bachelor's degree in Biology and Chemistry in 1992, then from the University of Washington School of Law in 2002. After graduating law school, I served as a law clerk for two years (2002-2004) with United States District Judge Honorable Marsha J. Pechman in the Western District of Washington. I then

1  served as a law clerk for one year (2004-2005) with Ninth Circuit Judge Honorable Betty Binns

2  Fletcher.

3      4.    Immediately following my clerkships, I joined MacDonald Hoague & Bayless as

4  an associate.  I became a partner in 2011, and was the managing partner from September 2012

5  through December 2014.

6      5.    Since joining MacDonald Hoague & Bayless, I have focused my practice on

7  employment and civil rights litigation, almost exclusively on behalf of plaintiffs.  I have

8  successfully represented a significant number of clients in employment discrimination matters,

9  First Amendment free speech cases, other civil rights cases, and in police misconduct cases, in

10  both District Court and the Ninth Circuit. *See, e.g.*, *Karl v. City of Mountlake Terrace*, 678 F.3d

11  1062 (9th Cir. 2012) (affirming right against retaliatory termination of public employee for

12  testifying at deposition); *Clairmont v. Sound Mental Health*, 632 F.3d 1091 (9th Cir. 2011)

13  (affirming right against termination from employment for testifying in court in criminal

14  proceeding).  I also recently achieved a 9-0 decision in *Blackburn v. State*, 186 Wn.2d 250, 261,

15  375 P.3d 1076, 1081 n.4 (2016), a case involving Western State Hospital (DSHS) employment

16  practices in which the Washington Supreme Court held that it was unlawful race discrimination

17  to assign nursing staff to patients by considering staff's race.

18      6.    I am also a member of the Amicus Committee for the Washington Employment

19  Lawyers Association (WELA).  I am also the President of the Board for the Unemployment Law

20  Project, a non-profit organization that assists lower income workers to obtain unemployment

21  benefits.

22      7.    In our firm, partners practicing in employment civil rights charge (in both hourly

23  and contingent matters) between $425 and $600 per hour.  My current hourly rate is $450.  Our

24  litigation associates charge hourly rates between $275 and $375, depending on experience.  Our

25  litigation department currently employs two paralegals.  One of them, Troy Locati, is a legal

26  investigator and senior paralegal.  He has over 40 years of experience in litigation support.  Mr.

27  Locati's standard hourly rate is $220.  Laura Faulstich is a former MHB paralegal.  She has been

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES,
AND INTEREST - 2

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

a litigation paralegal for 20 years.   MHB's standard billing rate for Ms. Faulstich was $175 per hour.  During this litigation, Mr. Shaeffer's rate increased from $425 to $450, Ms. Chamberlain's rate increased from $400 to $425, and Ms. Faulstich's rate increased from $85 to $175.  At trial, we made the decision to have Mr. Kramer charge a paralegal rate of $180 for his time in Court, assisting with the trial, in particular with the technological aspects of our trial presentation. The last page of the attached ledgers also shows time and rates expended by other MHB attorneys and staff, less than 10 hours total.   All rates stated in this paragraph and the ledgers are charged to both hourly and contingent clients, and are well within the range of hourly rates charged and recovered by attorneys and paralegals of comparable experience in the local market for employment discrimination and other civil litigation.  I either contemporaneously recorded the time that I spent on this case, or logged my time at the end of the day if I was unable to contemporaneously do so. The total hours worked and amounts claimed are:

| TIMEKEEPER | RATE | HOURS | TOTAL |
|---|---|---|---|
| Joe Shaeffer | $450.00 | 486.3 | $218,835.00 |
| Katherine Chamberlain | $425.00 | 270.7 | $115,047.50 |
| Sam Kramer (trial) | $180.00 | 16.2 | $ 2,916.00 |
| Sam Kramer | $275.00 | 329.4 | $ 90,585.00 |
| Troy L. Locati | $220.00 | 114.9 | $ 25,278.00 |
| Laura J. Faulstich | $175.00 | 27.0 | $ 4,725.00 |
| Other Timekeepers | Various | 7.2 | $ 2,472.50 |
|  |  |  |  |
| TOTALS |  | 1,251.70 | $459,859.00 |

8.      In my opinion, and based on my experience, the PUD took several positions in response to Plaintiff's WLAD claims and damages that unnecessarily increased the time required by Plaintiff's counsel to prosecute this action.  These include:

(a)      The PUD asserted an "undue hardship" defense and argued that the accommodation requested by Ms. Stewart was that she be allowed to come to work while impaired.  *See*, *e.g.* Dkt. 43, 1:15-16, 19:14-20:11.  Ms. Stewart never made such a request, and never took that position in this litigation, yet, the PUD repeatedly took this position so she was required to respond to this strawman argument repeatedly during litigation.

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES, AND INTEREST - 3

No. 2:16-cv-00020-JCC

11020.Fkg207h01

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

(b)    The PUD asserted a "failure to mitigate damages" defense and sought the discovery of voluminous records relating to Ms. Stewart's substitute paraeducator job despite clear evidence that this was nowhere near a comparable position.  Responding to this defense and the PUD's efforts to obtain information on this issue, required motion work and time-intensive record review.  *See e.g.* Dkt. 20, 21, 46, 47.

(c)    The PUD conducted extensive discovery of Ms. Stewart's post-termination medical history, requesting voluminous medical records and even going so far as to depose Dr. Dongmei Liu, a neurologist Ms. Stewart began seeing well after the PUD terminated her employment.  The PUD then designated Dr. Liu as a potential witness.  At trial, the Court predictably sustained Ms. Stewart's objections that evidence of her post-termination medical treatment was irrelevant.  As with so many of the PUD's defense theories, its scrutiny of Ms. Stewart's recent medical history appears to have had no purpose beyond vilifying her by portraying her as a drug addict uninterested in alternative treatment.

(d)    The PUD asserted a "bona fide occupational qualification" (BFOQ) defense throughout litigation.  Dkt. 12, 9:1-2, Dkt. 56, 2:13-14, Dkt 57 at 21:11 - 22:4, Dkt. 69, 36:15 – 37:12.  This forced Ms. Stewart to brief the issue on multiple occasions.  A BFOQ defense requires the showing that the employer must apply the qualification to all employees, even when an employee without the qualification could perform the job.  *Rose v. Hanna Mining Co.*, 94 Wn.2d 307, 311, 616 P.2d 1229, 1231 (1980).  The PUD presented no evidence on this issue at trial, rendering all work performed in response to the defense a waste of time.

(e)    The PUD also asserted a "business necessity" defense to Ms. Stewart's WLAD claim, Dkt. 12, 8:21-22, Dkt. 56, 2:11-12, Dkt 57, 20:12-21:10, Dkt. 69, 36:5-14, requiring additional briefing and legal research, all of which was unnecessary because Washington does not recognize a business necessity defense to disparate treatment claims under the WLAD.  *Kries v. WA-SPOK Primary Care, LLC*, 190 Wn.App. 98, 139–40,

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES,
AND INTEREST - 4

No. 2:16-cv-00020-JCC

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

362 P.3d 974, 993 (2015). Even if the law did recognize such a defense, the PUD made no real effort to support it, other than arguing that Ms. Stewart should not be allowed to work while impaired.

(f)    The PUD repeatedly asserted that the reported concentration levels of hydromorphone in Ms. Stewart's urinalysis proved she was impaired. Dkt. 26, 19:22-23, Dkt. 49, 3:3-6, Dkt. 57, 10:1-6. The PUD identified no scientific basis for concluding that these concentration levels indicated (or conclusively establish) impairment, nor did it even ask their own medical expert to opine on this question. The PUD's bald assertions without scientific support that the concentration levels indicate impairment, coupled with its willful failure to seek such support suggests that it hoped to convince the Court that the concentration levels have meaning they do not actually have. The PUD's theory required Ms. Stewart to brief this issue extensively, Dkt. 38, 7:12-21, hire an expert to opine on this issue, Dkt. 41 (Dr. Krashin declaration), and devote Dr. Krashin's expert analysis and testimony at trial to this issue.

(g)    The PUD repeatedly accused Ms. Stewart of being a drug addict, an issue that had no relevance to any claim or defense. It did so through the report of its medical expert, Dr. Lawrence Murphy. It did so through numerous discovery requests for medical records completely unrelated to Ms. Stewart's work at the PUD. It then questioned Ms. Stewart's physician, Dr. Philip Smith, about instances in which she received treatment at emergency rooms in order to imply that she exhibited drug seeking behavior. It did all of this despite the opinion of the drug counselor it required her to see when she was employed that she did not have a drug dependency problem, and despite its utter failure to explain the significance of any addiction from which Ms. Stewart might have suffered. Then on the eve of trial the PUD finally put forward a brand new theory that Ms. Stewart's alleged addiction was relevant because she exhibited a "preference" for narcotic medications over other medically prescribed treatments, and thus any impairment from which she suffered due to those medications was not "treatment"

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

protected by the WLAD.  Dkt. 59, 5:4 – 6:15. The PUD then chose not to present any evidence on this theory at trial.  All of the PUD's efforts to portray Ms. Stewart as a drug addict created additional work for her attorneys in the form of briefing, discovery, and trial planning.

(h)    The PUD attempted to win its case by putting Dr. Smith on trial instead of Ms. Stewart, spending significant trial time cross-examining him and Dr. Krashin, and calling its own expert, Dr. Murphy, on the subject of whether Dr. Smith's prescribed treatment of Ms. Stewart was consistent with standard treatment of migraines.  It remains unclear why the PUD felt this was a relevant or appropriate way to use trial time because, as the Court found, "The propriety of Dr. Smith's medical care is not the subject of this trial," Dkt. 72 at 3:1.  The PUD's errant theory forced Ms. Stewart to devote significant time and resources to prepare for trial on this topic.

9.    The PUD's multiple, and often changing, positions drove up the number of hours that Plaintiff's counsel spent on these issues in discovery and at trial.  Plaintiff filed a motion for summary judgment to narrow the number of defenses that would be litigated at trial, but the PUD dug its heals in on each, requiring Plaintiff's counsel to spend significant time preparing to rebut each of these multiple defense theories before and at trial.

10.    Following the PUD's termination of her employment, Ms. Stewart applied for unemployment benefits with the State of Washington's Employment Security Department (ESD).  The PUD contested Ms. Stewart's application for unemployment benefits.  The State initially granted Ms. Stewart benefits.  The PUD appealed that decision, arguing that the State should deny Ms. Stewart benefits because she was terminated her "for her misconduct by coming to work impaired under the influence of a prescribed narcotic" in violation of the District's Fitness for Duty and Employee Rules of Conduct Directives and her Return to Work Agreement. In August 2015, the State agreed with the PUD and reversed course, concluding that Ms. Stewart had been terminated for misconduct and should be denied benefits.  In October 2015, that decision was affirmed, and later appealed.

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES,
AND INTEREST - 6

No. 2:16-cv-00020-JCC
11020.Pkg207101

11.    In December 2015, Ms. Stewart filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that the PUD failed to accommodate her disability and discriminated against her in violation of the Americans with Disabilities Act— the federal law counterpart to the WLAD.  At the time Ms. Stewart filed her lawsuit in January 2016, the PUD was preparing a lengthy 15 page response letter to the EEOC, in which it argued that "Ms. Stewart's claims of disability discrimination are without merit" and enclosed approximately 140 pages of exhibits, including declarations and documents to support its position.

12.    As required by statute, Ms. Stewart served the PUD with a Tort Claim Form and draft Complaint for Damages prior to initiating this litigation.  At that time, she claimed damages in the range of $729,920 to $829,920, excluding retirement damages.  The PUD received the Tort Claim in October 2016.  The PUD did not respond.  So, Plaintiff filed her lawsuit in January 2016.  A PUD representative later claimed that the Tort Claim was not received, causing Plaintiff to voluntarily dismiss her state law claims and re-serve her Tort Claim, only to learn five days later that the PUD *had* received Plaintiff's notice of tort claims in October 2015.  In any event, the PUD chose not to respond to either Tort Claim or seek to resolve this dispute in any way.

13.    From my view as lead counsel, all of the PUD's actions between its termination of Ms. Stewart and commencement of this litigation indicated that: the PUD felt its justification for terminating Ms. Stewart was very strong; it intended to oppose any efforts by Ms. Stewart to prove that her firing unlawful; litigation would be lengthy and contentious; and conciliation was extremely unlikely.

14.    As required by the Court's scheduling order and the local rules, the parties attended mediation in August 2016.  The highest number offered by PUD was $40,000, which was rejected by Ms. Stewart.  Ms. Stewart's last offer at mediation was $1,950,000.  In mid-April 2017, Ms. Stewart re-initiated settlement discussions by offering to resolve this case for $1,900,000—inclusive of all damages, fees, and costs.  Three minutes after transmission of the offer, the PUD rejected it and made no counter.  **Exhibit 1** is a true copy of the email exchange I

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES,
AND INTEREST - 7

No. 2:16-cv-00020-JCC
11020.Pkg207101

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    had with defense counsel in mid-April 2017.

2        15.    Throughout the litigation, Plaintiff's counsel took steps to expend time efficiently

3    and reduce the number of hours needed to prosecute this case.  I was the only attorney who

4    performed substantial work on this case prior to the failed mediation in August 2016, when it

5    became clear that this case would likely go to trial.  We then divided labor to focus their efforts

6    and not duplicate work.  For example, during discovery and at trial, I was in charge of proving

7    liability while Ms. Chamberlain was in charge of proving damages.  Mr. Kramer (who bills at a

8    lower rate) was in charge of the bulk of the briefing from the summary judgment stage through

9    the post-trial submissions.  We took short depositions – most lasting less than two hours.  Only

10   the very first deposition we took (Sarah Scott) was attended by two attorneys, one of whom was

11   Mr. Kramer.   We also filed a motion for partial summary judgment to narrow the issues for trial,

12   and we were successful in eliminating the need for testimony and evidence on the question of

13   Ms. Stewart's disability.

14       16.    MHB attorneys and staff had expended 1,251.70 hours on this litigation, prior to

15   entry of the judgment on June 21, 2017.  Prior to filing this motion, Ms. Chamberlain, Mr.

16   Kramer, and I reviewed our time records, corrected errors, and identified time entries related

17   only to research or writing related only to the medical leave claims—for which no compensation

18   is sought here.  In addition I have reviewed all time billed by all MHB attorneys and staff in this

19   case, and the costs expended.  **Exhibit 2** is a true copy of the fee ledger for this case.  *The starred*

20   *and boxed items are work specifically done on Plaintiff's leave claims, so these amounts have*

21   *been subtracted from the amount claimed here.*  Based on my experience and familiarity with the

22   effort required to litigate employment discrimination cases and prepare for trial, I believe that the

23   total hours billed, and costs expended, are more than reasonable.  Colleagues in the Plaintiff's

24   employment bar often have billings of hundreds of thousands of dollars more in similar cases.

25       17.    **Exhibit 3** is a true copy of the cost ledger for this case.  There are a few items that

26   apparently were billed to the wrong matter, which I have shown in pen notations, and I have

27   subtracted those from the amount of costs claimed.   I believe all costs incurred in this litigation

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES,
AND INTEREST - 8

11020.P kg207101

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

were reasonable and necessary for proper prosecution of this case.

18.      Since entry of the judgment, MHB attorneys have expended 58.40 hours preparing this motion, as shown on **Exhibit 4**, a true copy of the fees and cost ledger for the time billed and costs expended in preparation of this motion.

I declare under penalty of perjury of the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this 21st day of July, 2017, at Seattle, Washington.


_/s/ Joe Shaeffer_

Joe Shaeffer

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES,
AND INTEREST - 9

No. 2:16-cv-00020-JCC
11020.Pkg207101

1

CERTIFICATE OF SERVICE

2

The undersigned certifies under penalty of perjury according to the laws of the United

3

States and the State of Washington that on this date I caused to be served in the manner noted

4

below a copy of Declaration of Joe Shaeffer on the following individual(s):

5

6

**Attorneys for Snohomish County PUD No.: 1**

7

8

Suzanne K. Michael, WSBA No. 14072
Cindy M. Lin, WSBA No. 42959
Michael & Alexander, PLLC

9

701 Pike Street, Suite 1150
Seattle, WA 98101

10

Phone:  206-442-9696
Facsimile: 206-442-9699

11

Email:  Suzanne@michaelandalexander.com
Email:  Cindy@michaelandalexander.com

12

Email:  Lois@michaelandalexander.com
Email:  Taylor@michaelandalexander.com

13

14

Phillips A. Talmadge, WSBA No.  6973
Sidney C. Tribe, WSBA No.  33160

15

Talmadge/Fitzpatrick/Tribe
2775 Harbor Avenue SW

16

Third Floor, Suite C
Seattle, WA  98126

17

Email:  phil@tal-fitzlaw.com
Email:  Sidney@tal-fitzlaw.com

18

19

[x] Via Electronic Case Filing System (ECF)
[ ] Via Facsimile

20

[ ] Via First Class Mail
[ ] Via Email – *Per Email Service Agreement*

21

[ ] Via Messenger
[ ] Via Overnight Delivery

22

23

DATED this 21st day of July, 2017, at Seattle, Washington.

24

25

s/*Terri Flink*_____
Terri Flink, Legal Assistant

26

27

DECLARATION OF JOE SHAEFFER IN SUPPORT OF PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES, COSTS, TAX CONSEQUENCES,
AND INTEREST - 10

No. 2:16-cv-00020-JCC

11020.Pkg207161

Macdonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961