THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CYNTHIA STEWART,<br><br>    Plaintiff,<br>v.<br><br>SNOHOMISH COUNTY PUBLIC UTILITY DISTRICT NO. 1,<br><br>    Defendant. | CASE NO. C16-0020-JCC<br><br>ORDER ON MOTION FOR ATTORNEY FEES |

This matter comes before the Court on Plaintiff Cynthia Stewart's motion for attorney fees (Dkt. No. 80). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and GRANTS the motion in part for the reasons explained herein.

I. **BACKGROUND**

Plaintiff Cynthia Stewart brought two claims against Defendant Snohomish County PUD No. 1 (the PUD): violation of the Washington Law Against Discrimination (WLAD) and violation of her right to protected medical leave under the Family Medical Leave Act (FMLA) and Washington Family Leave Act (WFLA). (Dkt. No. 72 at 1.) Stewart prevailed on her WLAD claim and the Court instructed her to bring any motion for reasonable attorney fees and costs, pre- and post-judgment interest, and recovery of tax consequences within 30 days. (*Id.* at 29.)

Stewart did so, seeking $611,966.87 in attorney fees (the lodestar with a multiplier, plus fees for preparing this motion and reply); $58,007.80 in costs; and $626,584.00 as an offset for adverse tax consequences, totaling $1,296,558.67 plus interest. (*See* Dkt. No. 80 at 12; Dkt. No. 98 at 6; *see also* Dkt. No. 81-2 at 54; Dkt. No. 81-3 at 19; Dkt. No. 88 at 1, Dkt. No. 99 at 7, Dkt. No. 99-1 at 2, Dkt. No. 101 at 3.)

The PUD objects to the fee request on multiple grounds. (*See generally* Dkt. No. 90.) The PUD asks the Court to award Stewart no more than $370,042.20 in attorney fees, $45,697.98 in costs, and $357,778.00 in tax consequences and interest, for a maximum total of $773,518.18. (*See id.* at 12.)

## II. DISCUSSION

*Complexity and Contentiousness of Litigation*: First, the PUD disputes Stewart's statement that this litigation was complex and contentious. (Dkt. No. 90 at 2.) The Court agrees with Stewart that this case was relatively complex, both factually and legally, particularly in light of the fairly novel issue of prescribed narcotics in the workplace. Moreover, it was clear from the beginning that the PUD resolutely disputed Stewart's position. The Court rejects the PUD's suggestion that this case was simple and that the litigation was largely cooperative.

*Paralegal Hourly Rate*: The PUD also argues that Stewart billed an unreasonable rate for paralegal time, with Troy Locati billing $175.00 per hour and Laura Faulstich raising her hourly rate from $85.00 to $175.00 during the course of litigation. (Dkt. No. 90 at 5.)

In the past, the undersigned has approved a range of paralegal rates, including $145.00 (*Khalid v. Citrix Sys. Inc.*, C16-0650-JCC, Dkt. No. 28 at 2), $160.00 (*Alpha Energy v. L.D. Hughes Development LLC*, C08-1573-JCC, Dkt. No. 14 at 4), and $240.00 (same). The rate charged in this case falls within that range, and the paralegals at issue have significant experience. (*See* Dkt. No. 81 at 2-3.) Moreover, a superior court judge recently approved an even higher hourly rate, $220.00, for Locati. (*See* Dkt. No. 99 at 1-2.) The Court finds this approval persuasive. The PUD's objection as to the paralegal billing rates is overruled.

*Block-billing*: The PUD further asserts that the Court should reduce hours where Stewart's counsel engaged in block-billing. (Dkt. No. 90 at 5.) While the Ninth Circuit has endorsed a district court's reduction of block billing, *see, e.g.*, *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), this Court finds that Stewart's counsel's entries "cover relatively limited amounts of time and give sufficient information for the Court to assess the nature of the work done." *See McEuen v. Riverview Bancorp, Inc.*, 2014 WL 2197851 at *6 (W.D. Wash. May 27, 2014); (*see also* Dkt. No. 91-1 at 2; Dkt. No. 81-2 at 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 30, 31, 33, 38, 41, 42, 48). "[L]awyers are not required to record in great detail how each minute of their time is spent on a case; rather, they must only provide enough evidence to show that the effort expended during those hours was reasonable." *McEuen*, 2014 WL 2197851 at *6. Stewart's attorneys have done so. The Court will not reduce the number of hours for block-billing.

*Optional Pre-Litigation Claims*: In addition, the PUD argues that Stewart should not be able to recover fees for activities before she filed her tort claim and civil complaint. (Dkt. No. 90 at 6.) But, as Stewart points out, this work—which included seeking unemployment benefits and filing a complaint with the Equal Employment Opportunity Commission—provided important information that helped her prevail at trial. (*See* Dkt. No. 98 at 2-3; Dkt. No. 99 at 7-8.) This objection is overruled.

*Clerical Activities*: The PUD also maintains that Stewart improperly billed for clerical tasks performed by attorneys. (Dkt. No. 90 at 7; Dkt. No. 91-3 at 2-3.) In reply, however, Stewart's attorneys explain that this is a misperception and describe how the supposedly clerical entries actually constitute billable time. (Dkt. No. 99 at 8-10; Dkt. No. 100 at 1-2; Dkt. No. 101 at 2.) This objection is overruled.

*Limited Success*: The PUD further alleges that Stewart's recovery should be reduced based on her limited success at trial. (Dkt. No. 90 at 8.) The Court disagrees. It is clear from Stewart's position and the evidence presented that her disability discrimination claim is the

driving force of this litigation. It is irrelevant that Stewart was partially unsuccessful at certain points along the way. *See Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("[A] plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.").

*Attorney Communications*: The PUD also contends that Stewart's fee request includes excessive conferences and communications between experienced attorneys. (Dkt. No. 90 at 8-9.) Again, the Court disagrees. "[T]hese activities are essential to the role of a lawyer, and to deny fees for communication disincentivizes sound lawyering." (*Waste Action Project v. Astro Auto Wrecking, LLC*, C15-0796-JCC, Dkt. No. 97 at 2.) While the Ninth Circuit has upheld the denial of fees for intra-office conferences in straightforward matters, or where one attorney declared he could do the work unassisted, *see, e.g., Welch*, 480 F.3d at 949, this case was fairly complicated. The Court will not penalize Stewart's counsel for collaboration.

*Motion for Attorney Fees*: The PUD maintains that similar patterns are evident in the motion for attorney fees and costs, asking the Court to reduce Stewart's fees for the present motion by $1,681.25. (Dkt. No. 90 at 10.) Given that the Court overrules the PUD's objections thus far, the Court also declines to make this reduction.

*Lodestar Multiplier*: The PUD challenges Stewart's application of a multiplier to the lodestar in this case, arguing that it is not warranted because the only basis for Stewart's request is the contingent nature of the case, which is not a valid consideration in the Ninth Circuit. (Dkt. No. 90 at 10-11.) As support, the PUD cites *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), which states: "[T]he Supreme Court declared that the typical federal fee-shifting statutes, including 42 U.S.C. § 2000e–5(k), do not allow for upward adjustments to a lodestar fee on the basis that prevailing party's counsel incurred the risk of nonpayment." That case involved a Title VII claim, where 42 U.S.C. § 2000e–5(k) applied. *Id.* at 1540-41. However, this is a WLAD case. Such a fee-shifting statute does not apply.

Rather, in this case, the Court has "broad discretion in awarding a contingency

multiplier." *See Hotchkiss v. CSK Auto, Inc.*, 949 F. Supp. 2d 1040, 1046 (E.D. Wash. 2013) (addressing a WLAD claim). In fact, "the WLAD places a premium on encouraging private enforcement [and] the possibility of a multiplier works to encourage civil rights attorneys to accept difficult cases." *Pham v. Seattle City Light,* 151 P.3d 976, 983 (Wash. 2007). Still, "a court should only award a contingency multiplier when 'the lodestar figure does not adequately account for the high risk nature of the case.'" *Hotchkiss*, 949 F. Supp. 2d at 1046 (quoting *Pham*, 151 P.3d at 983).

The Court finds that, as in *Hotchkiss*, "this was not a particularly high-risk case." *See* 949 F. Supp. 2d at 1046. The Court recognizes that Stewart's "prospect of recovery was by no means certain." *See id.* However, given the evidence regarding Stewart's medical needs and the PUD managers' suspicious treatment of Stewart, as well as the lack of any real evidence that Stewart was a drug-seeker or had contravened her doctor's prescribed treatment, "an objective observer . . . might have reasonably concluded that [Stewart's] prospects of recovery were above average in comparison to those of other employment discrimination plaintiffs." *See id.*

Moreover, as in *Hotchkiss*, counsel's hourly billing rates reflected the "risk inherent in accepting a complex employment discrimination case." *See id.* The partners on the case billed $450.00 and $425.00 an hour. (*See* Dkt. No. 80 at 4.) The parties agree that this is a typical rate for employment lawyers in this market. (*See* Dkt. No. 81 at 2-3; Dkt. No. 90 at 4.) This rate is also significantly higher than that charged by defense counsel. (*See* Dkt. No. 90 at 4.) While this is unsurprising, given the burden of proof placed on Stewart, it leads the Court to find that the lodestar figure, without a multiplier, accounts for the nature of this case. The Court denies Stewart's request for a contingency multiplier.

*Reduction of Costs*: The PUD further argues that Stewart seeks an unreasonable amount of costs. (Dkt. No. 90 at 11.) The PUD maintains that many of the costs are not recoverable because they "should be incorporated into a firm's overhead and hourly rates." (*Id.* at 12) (citing *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 212 (Wash. 1987)). However, *Tampourlos* is a

Consumer Protection Act case. *See* 733 P.2d at 210. In WLAD cases, by contrast, Washington courts allow "liberal recovery of costs by the prevailing party in civil rights litigation, in order to further the policies underlying these civil rights statutes." *Blair v. Wash. St. Univ.*, 740 P.2d 1379, 1387 (Wash. 1987). Stewart has shown that the challenged costs are reasonable. (*See* Dkt. No. 99 at 12.) The Court overrules this objection.

*Calculation of Tax Consequences*: Finally, the PUD asserts that Stewart improperly calculated Stewart's adverse tax consequences. (Dkt. No. 90 at 12.) A plaintiff who prevails on a WLAD claim is entitled to an offset for federal income tax consequences as an equitable remedy. *Blaney v. Int'l Ass'n of Machinists and Aerospace Workers, Dist. No. 160*, 87 P.3d 757, 762-63 (Wash. 2004). This furthers the WLAD's goal of "mak[ing] persons whole for injuries suffered on account of unlawful employment discrimination." *Id.* at 763 (internal quotations omitted).

Stewart seeks $626,584.00 in adverse tax consequences based on forensic economist Dr. Paul Torelli's calculations. (*See* Dkt. No. 86 at 2, 7-11.) The PUD presents a competing declaration from economist and certified public accountant William Partin, who criticizes Dr. Torelli's methodology and calculates the adverse tax consequences at $357,778.00. (Dkt. Nos. 93, 93-1.) In reply, Stewart submits a second declaration from Dr. Torelli, who addresses these criticisms and explains why they are not well-founded. (Dkt. No. 103-1 at 2-5.)

Having reviewed the three reports, the Court credits Dr. Torelli's calculation, particularly in light of his explanation as to the reconciliation between his method and an economics paper by Barry Ben-Zion, the primary authority cited by Partin. (*See* Dkt. No. 103-1 at 4-5; Dkt. No. 93-1 at 4.) The PUD's challenge to the amount of Stewart's tax consequences award is overruled.

## III. CONCLUSION

In sum, the Court finds the lodestar—as presented by Stewart, but without a contingency multiplier—is reasonable. The Court otherwise OVERRULES the PUD's objections to Stewart's fee request. Accordingly, the Court GRANTS IN PART Stewart's motion for fees (Dkt. No. 80). The motion is GRANTED except with respect to Stewart's request for a lodestar multiplier.

The Court AWARDS Stewart:

(1) Attorney fees in the amount of $496,884.00 ($459,859.00 in litigation fees, without a multiplier; $22,935.00 in fees for preparing the motion for fees; and $14,090.00 in fees for preparing the reply brief),

(2) Costs in the amount of $61,647.80 ($54,642.80 in litigation costs, $5,640.00 in costs for preparing the motion for fees; and $1,365.00 in costs for preparing the reply brief), and

(3) An offset for the adverse tax consequences of the damage award in the amount of $626,584.00,

For a total of $1,185,115.80, plus interest.

DATED this 22nd day of August, 2017.

*[signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE